Filed 6/27/16  Ten v. Shen CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LIN WEN TEN, | B255299 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. GC041516) |
| v. | |
| VINCENT SHEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John P. Doyle, Judge.  Affirmed.

Law Offices of Robert J. McKay, Robert J. McKay; Garret & Tully, Ryan C. Squire, Zi C. Lin and Motunrayo D. Akinmurele for Plaintiff and Appellant.

Law Offices of Paul P. Cheng, Paul P. Cheng and Peter Tran for Defendant and Appellant.

_____

Vincent Shen appeals a superior court judgment awarding his stepfather, Lin Wen Ten, $1,261,013 after the court found Shen and his deceased mother, Fong Chu Hsu, defrauded Ten by falsely titling a property acquired entirely with Ten's funds and during Ten and Hsu's marriage in Hsu's name as "a single woman" and subsequently transferring the property to Hsu and Shen as joint tenants. Shen argues the trial court erred in prejudicially relying on inadmissible evidence consisting of contested exhibits. Ten counters that many of the challenged evidentiary exhibits were not admitted and the exhibits that were admitted were not prejudicial because the court relied on other substantial evidence in making its ruling. Ten cross-appealed, arguing the court erred in refusing to award him punitive damages for Shen and Hsu's fraud.[1] We affirm.

## FACTUAL BACKGROUND

Ten and Shen's dispute involves a residence located in Arcadia. Before the property's purchase, Ten married Shen's mother, Hsu, in Taiwan. The couple were domiciled there prior to and upon Hsu's death on September 30, 2008. Hsu, who was of Taiwanese descent, apparently did not spend much time in the United States and did not read, speak, or understand English. Unlike Hsu, Shen lived in California from age 10 until 2009 and understands English well.[2] During his time in California, Shen attended Pasadena City College, Cal Poly Pomona, and Pepperdine University, obtained a degree in finance and a Series 7 financial license, and worked for Morgan Stanley.

On January 7, 2003, Hsu used Ten's funds to purchase the property for $1.85 million. According to Ten, he understood he and Hsu were purchasing the property together as husband and wife and the property would be jointly titled in their names as community property. Hsu, however, recorded the deed in her name only, as a

---

[1] Ten also initially cross-appealed for 100 percent of the sale proceeds, but in his final brief "for various reasons . . . decided to abandon the portion of his cross-appeal asking for 100% of the sale proceeds."

[2] Although Shen lived in California during the purchase of the property, he now primarily resides in Taiwan.

2

single woman. Ten contends he provided "every penny" required for the $1.85 million purchase and $1.4 million "holding, owning, and maintaining" of the property and Hsu never told him she had taken the property in her name only. After the purchase, Shen lived on the property for some period and during that time Ten directly wired Shen money required for the property's mortgage and maintenance. On August 4, 2006, Hsu purported to grant the property as a gift to herself, as "a single woman," and Shen as joint tenants. Shen had this second deed prepared in California, personally flew it to Taiwan, obtained his mother's signature, and had it recorded in California. Shortly thereafter, Shen purportedly encumbered the property with a $150,000 loan. On July 13, 2009, Shen sold the property to a third party purchaser for $2,850,000, netting $2,522,026. Shen received all the sale's proceeds, while Ten received none.

On September 18, 2008, Ten filed suit against Shen and Hsu for (1) quiet title, (2) fraud and deceit, and (3) conversion. By the time of trial in 2013, however, Hsu had passed away and Ten pursued only the fraud and deceit and conversion causes of action against Shen. Before the trial, Ten moved several times for judicial notice of various documents. These documents included Taiwanese laws relating to the division of marital property; Hsu and Ten's Taiwanese marriage and divorce certificates and household registration records;[3] Hsu's Taiwanese death certificate; Taiwanese bank and corporate records evidencing Ten's transfer of funds to Hsu; and California grant deeds for the property. The court admitted at least some of the exhibits over Shen's objection.

After a two-day bench trial, the court ruled for Ten, finding that Shen and Hsu had fraudulently titled the property and deprived Ten of his interest in it. The trial court awarded Ten half of the net sale proceeds. Ten and Shen both appealed.

**DISCUSSION**

On appeal, Shen argues he was prejudiced by the court taking judicial notice of and relying on several exhibits. Ten disagrees and alternatively argues other substantial

---

[3] Hsu and Ten were apparently divorced at one point and later remarried. Shen does not dispute that Hsu and Ten were married during the purchase of the Arcadia property or at her death.

3

evidence supported the findings; he also counters the court erred in not awarding him punitive damages.

We review evidentiary rulings for an abuse of discretion. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) We reverse "only if the party appealing demonstrates a 'miscarriage of justice'—that is, that a different result would have been probable if the error had not occurred." (*Zhou v. Unisource Worldwide, Inc.* (2007) 157 Cal.App.4th 1471, 1480, citing Evid. Code, § 354, and Code Civ. Proc., § 475.)

## A. Even if the court improperly admitted Ten's pretrial exhibits, other sufficient evidence supported the findings

### 1. Exhibits 7 and 21–24

As an initial matter, the parties do not agree which of Ten's exhibits the court admitted. Shen claims the court improperly admitted exhibits 6–11, 20–27, 44, and 47, but Ten argues the court did not admit exhibits 7 and 21–24. The clerk's transcript does not reveal precisely which exhibits the court admitted, and, despite Shen's contention to the contrary, the statement of decision is unclear as to whether the court admitted the exhibits; if anything, it suggests exhibits 21–24, were not admitted.[4] A reporter's transcript may have aided in determining which exhibits were admitted, but Shen failed to provide one; he also failed to submit a proposed settled statement. Ten, however,

---

[4] In its statement of decision the court wrote: "Defendant Shen's counsel's only essential response—to the somewhat mountainous body of documentary and testimonial evidence that plaintiff offered in support of his claim that all of the subject purchase and maintenance monies were provided by Mr. Ten—was that this or that document was not sufficiently authenticated, or that this or that document was not substantially trustworthy or reliable, citing for example *Exhibits 21–24 that were not admitted into evidence at trial.* However, the Court has not relied on any single document or on any single group of documents in finding that there is no question that Mr. Ten provided all the money that was applied toward the purchase and maintenance of the Carriage House Property. The Court finds that Mr. Ten's trial testimony in this regard and the exhibits that *were* admitted into the evidence in support thereof, were more than sufficient to enable plaintiff to meet his burden of establishing these facts by a preponderance of the evidence." (Italics added.)

4

submitted a proposed settled statement, which Shen did not oppose, and the court adopted it. We draw our facts from the settled statement which states the court did not admit exhibits 7 and 21–24 and we therefore do not review their alleged admission.

### 2. Exhibits 6, 20, 25–27, 44, and 47

Ten claims Shen failed to object to exhibits 25–27, 44, and 47 and has not presented an adequate record to prove he preserved at trial his pretrial objections to exhibits 6 and 20; exhibits 6, 20, 25–27, 44, and 47 purportedly evidence Ten's funding the purchase and maintenance of the property. The statement of decision lends some support to Shen's claim that he objected to these exhibits.[5] The court specifically stated, however, it had "not relied on any single document or on any single group of documents in finding that there is no question that Mr. Ten provided all the money that was applied toward the purchase and maintenance of the Carriage House Property." It reiterated "none of these documents of which the Court took judicial notice . . . were singly *or together* dispositive of the various issues which this case presents." (Italics added.) Instead, the court stated, "Mr. Ten's trial testimony in this regard and the exhibits that were admitted into the evidence in support thereof, were more than sufficient to enable plaintiff to meet his burden of establishing these facts by a preponderance of the evidence." The court found Ten's testimony on this subject was "entirely credible," "consistently both thorough and thoughtful," presented in a "measured and thoughtful demeanor," "compelling," and "essentially unrebutted."

On the other hand, "Shen made statements that were palpably of questionable veracity," and the court found his testimony "not believable in substantial measure." Other equally unconvincing testimony likewise diminished Shen's credibility. For example, despite the court determining that Shen primarily had prepared and executed the August 4, 2006 joint tenancy (grant) deed, "Shen testified at trial that he basically had no substantial understanding at that time of the significance of this Grant Deed and in particular had no substantial understanding that pursuant to the subject Grant Deed he

---

[5] See language in preceding footnote.

(Shen) would become a joint tenant in the subject Carriage House property which was then apparently valued in excess of two million dollars." Shen "fumbled and equivocated and essentially 'professed ignorance' at trial about the meaning of this Gran[t] Deed transaction practically in its entirety." The court found this testimony "to be conspicuously and uncomfortably unbelievable." "Shen's 'pleas of ignorance' in this regard had the effect of further eroding his credibility in the eyes of the Court."

We will not reweigh credibility determinations. (*Postier v. Landau* (1953) 121 Cal.App.2d 98, 101.) Although "the testimony of a single witness, even the party h[im]self, may be sufficient" to sustain the judgment (*Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 134; accord, *Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1101), the court also found that exhibit 46, two tables of funds used in the purchase of the property, corroborated Ten's testimony. Shen does not challenge exhibit 46 on appeal. Because of this other supporting testimonial and documentary evidence, Shen was not prejudiced even if the court improperly admitted exhibits 6, 20, 25–27, 44, and 47.

### 3. Exhibits 8–11

Exhibits 8–11 concern issues not in dispute: Hsu's death and Hsu and Ten's marriage. Shen *himself* listed these events as undisputed facts in his proposed statement of decision. "'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.) Shen invited the commission of error by proposing facts with which he apparently did not agree and now is estopped from asserting them as grounds for reversal. In addition, even if these records were improperly admitted, Shen could not have been prejudiced by them because he does not dispute the facts they support and there is nothing in the record to show the facts were not otherwise adequately established by Ten's trial testimony.

### B. Substantial evidence supports the court's refusal to award punitive damages

We review a punitive damages award for substantial evidence. (*Stewart v. Union Carbide Corp.* (2010) 190 Cal.App.4th 23, 34.) The "trial court's determination of

whether damages were excessive 'is entitled to great weight' because it is bound by the 'more demanding test of weighing conflicting evidence than our standard of review under the substantial evidence rule . . . .' [Citation.] All presumptions favor the trial court's determination [citation], and we review the record in the light most favorable to the judgment [citation]." (*Fortman v. Hemco, Inc.* (1989) 211 Cal.App.3d 241, 259.) Ten, however, argues we should review the punitive damages award de novo because the court's findings compelled an award. Ten cited no case where an appellate court reviewed the *denial* of punitive damages de novo and we found none either. We therefore decline to adopt a new standard and review the damages award for substantial evidence.

The court readily acknowledged the difficulties in reaching a determination in this matter which "stretche[d] out over at least thirteen years and across two continents." Here, "there were relatively few and mostly very spare offers of proof regarding choice of law issues, marital law issues, community property issues including whatever its 'equivalent' in Taiwan might be, inheritance law issues, and so on, even though all or at least some of these areas of law were implicated to one extent or another by this transnational marital and inheritance dispute." "Thus, some of the issues presented by this case [were] determined by the Court without it possessing the level of clarity that would be desirable as a predicate for fact-finding, and for identifying and applying the governing law to the facts." These statements about the complexity of issues and lack of developed arguments sufficiently support the court's determination it could not find fraud by clear and convincing evidence.

## DISPOSITION

The judgment is affirmed.  Ten is awarded his costs on appeal under California Rules of Court, rule 8.278.

NOT TO BE PUBLISHED.


                                        LUI, J.

We concur:


ROTHSCHILD, P. J.


JOHNSON, J.